1375

Tom WARD d/b/a R.D.C., Respondent v. Gregory S. PORTER, Gabrielle P. Porter and Lincoln Federal Savings and Loan Association, Appellants.

(383 S. E. (2d) 250)

Court of Appeals

*W. H. Bundy Jr.* and *E. Jeannette Heyward,* Charleston, *for appellants.*

*W. Rhett Eleazer,* of *Eleazer & Sautter,* Columbia, *for respondent.*

Heard June 7, 1989

Decided July 31, 1989.

LITTLEJOHN, Acting Judge:

The sole issue involved in this appeal is whether disputes growing out of a contractual relationship are to be tried in arbitration or in the usual fashion by the common pleas court.

Tom Ward, d/b/a R.D.C., Plaintiff-Respondent brought this action seeking foreclosure of a mechanic's lien against Gregory S. Porter and Gabrielle P. Porter who are owners of the realty involved. Defendant Lincoln Federal Savings and Loan Association is at this point a disinterested party.

The owners entered into a contract with Nicholson for the construction of a residence. Nicholson did not properly perform; the owners contacted Tom Ward (contractor) and entered into written agreements for the purpose of completing the building project.

It is the contention of the owners, as set forth in their answer to the mechanic's lien foreclosure action, that the dispute should be settled by way of arbitration. The trial judge denied the motion of the owners to force arbitration. The owners appeal. We reverse.

The parties signed three written contractual agreements which may be briefly described as follows:

## FIRST INSTRUMENT

On May 13, 1987, the parties signed a "Standard Form of Agreement Between Owner and Contractor." It provided specifically for more than twenty requirements (such as "salary and wages," "closet trim," and "kitchen cabinets") and for payment of $78,372. In addition, it specified an overhead and profit fee to the contractor of $6,000 for a total of $84,372. Within the contract as a part of the printed form,

there was an arbitration agreement providing that "All claims or disputes arising out of this contract or the breach thereof shall be decided by arbitration in accordance with the construction arbitration rules of the American Arbitration Association. . . ."

## SECOND INSTRUMENT

On May 14, 1987, the parties signed an additional agreement "for completing the construction" which provided as follows:

1. Fee of $6,000.00 is to be paid to R.D.C. as a total construction fee.

2. Workman's compensation insurance and general liability cost in the amount of $800.00 is to be paid to R.D.C.

3. R.D.C. will keep copies of all invoices, billing, etc. and provide full accountability of expenditures to be reimbursed of true cost on a monthly basis or as needed.

The effect of this instrument was to retain the $6,000 fee previously agreed to while converting the original contract to payment on a cost basis in hopes of reducing the overall payment. Absent a reference to the first instrument, no work to be performed is specified.

## THIRD INSTRUMENT

On May 30, 1987, the parties signed a form change order provided by the contractor which referred to "date of existing contract May 13, 1987." This third instrument presents no problem; it is significant only in that it refers to the first instrument. This change order was obviously designed to change the first instrument of May 13th—not the instrument of May 14th.

The owners argue that the first instrument, that of May 13th, is unambiguous and that the instrument of May 14th is merely an amendment and that the intent of the parties must be gleaned from the two instruments. Based on this contention they moved for an order forcing arbitration.

It is the contention of the contractor that he never intended for the instrument of May 13th to be binding, that it is not a genuine contract and was signed solely for the

purpose of assisting the owners incident to their conflict with Nicholson, the original builder. Neither the testimony of the owners nor the instruments themselves lend credit to this theory.

The first instrument was regularly solemnized, and this written contract needs no interpretation and may be carried out without reliance or extrinsic evidence. Only the first instrument specifies in detail those things to which the parties have agreed. The change order of May 30th in effect recognizes and ratifies the original contract of May 13th.

The trail judge ruled that inasmuch as there was a dispute relative to the binding effect of the contract, an ambiguity existed and that a jury should determine whether the contract was binding and whether arbitration would be forced.

The gravamen of the contractor's argument is that he had no intentions of being bound by this contract regular and enforceable upon its face. In testimony he refers to it as a "bogus contract." Our Supreme Court rejected an analogous argument in *Southmark Corporation v. Mungo*, 285 S. C. 363, 329 S. E. (2d) 760 (1985). There, the defendant attempted to avoid a clear obligation under a contract by submitting extrinsic evidence. The Court held:

> [The defendant] may not now vary the terms of the written contract by testifying that he did not intend to be bound beyond the seven-year period. His intentions were erroneously admitted into evidence and were of no consequence. He is not permitted to bootstrap himself out of a contract by asserting his intentions. If such were his intentions, they should have been made a part of the agreement. Mungo's testimony was parol evidence and cannot be admitted for the purpose of changing the contract or showing an intention or understanding different from that which is expressed in the written agreement.

Reliance upon *Shaw v. East Coast Builders of Columbia, Inc.*, 291 S. C. 482, 354 S. E. (2d) 392 (S. C. App. 1987) is misplaced; therein an ambiguity existed.

It follows that the Order of the circuit court is reversed and the case remanded for the purpose of forcing arbitration

consistent with the arbitration clause of the first instrument dated May 13, 1987.

Reversed and remanded.

SHAW and BELL, JJ., concur.